Jonathan M. Borg (JB-9487)
BORG LAW LLP
370 Lexington Avenue, Suite 2103
New York, NY 10017
Telephone:      (917) 495-4790
Facsimile:      (207) 433-4790
Email:          jmb@borg.nyc

Attorneys for Plaintiff, Vedder Price P.C.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x

**VEDDER PRICE P.C.,**                                    Case No. 16 CV

                           **Plaintiff,**                 **COMPLAINT**

           -against-

**US CAPITAL PARTNERS, LLC,**
**US CAPITAL PARTNERS, INC.,**
**JEFFREY SWEENEY and CHARLES TOWLE,**

                                   **Defendants.**
-------------------------------------------------------------x

        Plaintiff Vedder Price P.C. ("Vedder Price" or "Plaintiff"), by and through its attorneys,

BORG LAW LLP, and as and for its Complaint against defendants US Capital Partners, LLC ("USCP

LLC"), US Capital Partners, Inc. ("USCP Inc.", and together with USCP LLC, collectively,

"USCP"), Jeffrey Sweeney ("Sweeney"), and Charles Towle ("Towle", and together with USCP

LLC, USCP Inc., and Sweeney, collectively, the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

        1.      This is an action by Vedder Price to recover the sum of not less than $811,742.51

which is due to it from Defendants as a result of unpaid legal fees and expenses, which arose out

of its representation of Defendants in more than sixty discrete litigation and transactional matters.

## PARTIES

2.     Vedder Price is a professional corporation organized and existing under the laws of the State of Illinois whose principal place of business is in the State of Illinois.

3.     Upon information and belief, USCP LLC is a California limited liability company with a principal place of business located at 555 Montgomery Street, Suite 1501, San Francisco, California.

4.     Upon information and belief, USCP Inc. is a California corporation with a principal place of business located at 555 Montgomery Street, Suite 1501, San Francisco, California.

5.     Upon information and belief, Sweeney is a natural person who is a citizen of the State of California, who is USCP's CEO and Chairman, and who is one member of USCP LLC.

6.     Upon information and belief, Charles Towle ("Towle") is a natural person who is citizen of the State of California, who is USCP's Managing Partner, and who is the other member of USCP LLC.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(2).   Jurisdiction is proper because (1) the amount in controversy exceeds $75,000.00, exclusive of costs, interest, and attorneys' fees, and (2) Vedder Price is a citizen of the State of Illinois and Defendants are citizens of the State of California, over whom the Court has jurisdiction pursuant to N.Y. CPLR § 302 and pursuant to the Defendants' consent to such jurisdiction.

8.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2) or (3) because the events or omissions giving rise to the claim occurred in the Southern District of New York and because Defendants have consented to such venue.

## FACTS

### The Engagement of, and the Work Performed by, Vedder Price

9.      USCP LLC held itself out as, and USCP Inc. currently holds itself out as, a private investment bank, direct lender, co-lender, and lead financial arranger that (i) specializes in asset-based debt for small to middle market private and public companies, and (ii) provides prompt, innovative, and reliable financing solutions including lending, equity financing, and debt restructuring to businesses across the United States and abroad.

10.      On or about December 8, 2011, USCP LLC engaged Vedder Price to represent it and provide legal counsel to it in connection with several litigation and corporate business matters by executing an engagement letter of same date (the "USCP LLC Engagement Letter").

11.      In the USCP LLC Engagement Letter, USCP LLC agreed to compensate Plaintiff for the legal services provided to it on an hourly basis, to reimburse Plaintiff for out-of-pocket expenses incurred on its behalf, and to pay Plaintiff's monthly invoices within 30 days.

12.      Vedder Price thereafter provided to USCP LLC legal services in connection with recovering amounts due to USCP LLC against numerous defendants, which resulted in Vedder Price collecting significant money on its behalf, and defending it against numerous legal actions alleging, *inter alia*, that USCP LLC engaged in improper conduct with respect to its business practices, including through violations of the racketeer influenced and corrupt organizations act ("RICO"), fraud, fraudulent inducement, breach of contract, and unjust enrichment.

13.      Vedder Price also represented and defended Sweeney and Towle in those legal actions in which they were personally named as defendants.

14.     On or about September 30, 2014, however, Sweeney and Towle began operating USCP LLC's business under the name USCP Inc., although Vedder Price continued to represent USCP LLC in ongoing matters and undertook to represent USCP Inc. pursuant to the terms USCP LLC Engagement Letter.

15.     Although USCP LLC's business began being operated under the name USCP Inc., its business and all the material aspects thereof remained the same (or substantially the same), including its business purpose and operations, its business location, its telephone number, and its employees, staff, senior management, and owners.   Moreover, USCP LLC's client lists, intellectual property, goodwill, and other intangible assets were taken over by USCP Inc.

16.     USCP Inc.'s website also used the same URL as that which had been used by USCP LLC, though the name "USCP Inc." was substituted for "USCP LLC" in several instances therein, including in the context of archived blog posts relating to transactions conducted when the business was operated as USCP LLC.   Upon information and belief, USCP Inc. is also funding USCP LLC's settlement and other obligations.

17.     In all respects, each and every significant aspect of USCP Inc. was the same as USCP LLC except that it was ostensibly not saddled with the liabilities of USCP LLC that existed at the time it began operating as USCP Inc. or that might thereafter exist.

18.     On or about March 4, 2016, and in order to formalize the arrangement by which Vedder Price would provide legal services to USCP Inc., Sweeney executed an engagement letter on behalf of USCP Inc. (the "USCP Inc. Engagement Letter", and together with the USCP LLC Engagement letter, collectively the "Engagement Letter"), pursuant to which USCP Inc. agreed to compensate Plaintiff for the legal services provided to it on an hourly basis, to reimburse Plaintiff for out-of-pocket expenses incurred on its behalf, and to pay Plaintiff's monthly invoices within 30 days.

4

## Defendants Are Aware of the Amounts Due to Vedder Price

19. During the course of Vedder Price's representation of Defendants and at Defendants' request, Vedder Price and Defendants had regular weekly telephonic conferences to discuss all litigation matters (both potential and active) and any corporate matters which Vedder Price was handling for Defendants.

20. In advance of these weekly conference calls, Vedder Price provided Defendants with a status report setting forth in detail the status of each matter and the total amount of legal fees and costs incurred in each such matter to date.

21. Pursuant to these weekly meetings and the written status reports provided to them (in addition to receiving regular monthly invoices), Defendants were aware of the exact nature of the wok being performed by, and the amount of the legal fees and costs incurred by, Vedder Price in connection with each legal matter it handled on behalf of Defendants.

22. Despite being aware of the work being performed by Vedder Price and the amounts due as a result thereof, at no time did Defendants object to the work that was being, or which had been, performed by Vedder Price, or the costs and legal fees incurred by Vedder Price in connection therewith.

23. Between February 2012 and July 2016, Vedder Price rendered regular invoices and had regular discussions with Defendants via telephone and email regarding the legal services that it performed and disbursements that it incurred on behalf of Defendants in the total amount of at least $1,822,617.16, of which $1,010,874.65 was paid, leaving a balance of at least $811,742.51 with respect to Vedder Price's numerous representations of Defendants.

24. Sweeney and Towle, on behalf of USCP, both orally and in writing, promised Vedder Price on several occasions, as early as December 2011 and continuing through July 2016, that the full balance owed to Vedder Price for would be paid.

25.     Defendants induced Vedder Price to continue performing legal work on their behalf, despite a balance due and owing, by promising that Defendants would pay the entire balance in full.

26.     For example, on May 28, 2015, Sweeney stated in an email to Vedder Price:

> I will lay out a payment plan to take care of the "bulge" in unusually large fees. It looks like our spend [sic] is trending back to normalized levels after this period of extraordinary activity which balloons our balances.  It will take until the second week of June to propose the payments and we will start to execute on the plan in the June payment to you. I appreciate your patience with us here. Our revenue trajectory is increasing as usual but the temporary legal spend increased a little more quickly than that which created this temporary dislocation in aging.

27.     Thereafter, on June 13, 2015, Sweeney stated in an email to Vedder Price "[l]et me review the balances and I will confirm a payment plan… Currently we pay 10 to 20% of the outstanding balance every month and I have without fail for at least the last year."

28.     On January 25, 2016, Towle again promised to pay Vedder Price the amounts owed. He stated as follows:

> We are committed- main issue is make it 10k a week instead of 18k... Volatility to payment is due to size....  We sent 20k last week, 10 of which was on Friday.  Want commitment with zero payment volatility/variance then make it 10k, won't miss it.

29.     Shortly thereafter, on January 26, 2016, Towle further stated:

> Hey mitch, I really feel your pain. And I value you very much too. On many levels... we miss you and are saving our cash flows (lower legal costs accruals to date) in favor of focused down payments -as we committed for Vedder... 10k is something we can commit, like I said.

30.     Subsequently, on July 18, 2016, Sweeney proposed a further reduction in the monthly payment in an email to Vedder Price: "beginning August we will start paying $5000 per week to Vedder Price on your outstanding balance with the goal to increase that before the end of the year."

31.     Notably, none of the aforementioned communications included any claim that the invoices, or any portion thereof, were improper or invalid.  To the contrary, Defendants repeatedly promised full payment.

32.     At all relevant times herein, Defendants were aware of their seriously delinquent payments.  In fact, when Vedder Price attempted to discuss the issue with Defendants, Sweeney acknowledged the magnitude and seriousness of the debt by stating in a June 24, 2015 email to Vedder Price "[w]hen we owe you a historical pile of money you have every right to keep in close touch."

33.     Despite owing Vedder Price a substantial amount of money, as recently as June 28, 2016, Defendants attempted to persuade Vedder Price to continue providing legal services to them.  Specifically, Defendants attempted to engage Vedder Price on a new matter by stating in a June 29, 2016 email as follows:

> That release we need review of for Our BD, Global securities, maybe we should send over to Mitch [a Shareholder of Vedder Price] for an estimate from his securities guy?  They did a pretty good job on the other docs associated with the BD and the Due Diligence engagement doc.  We would pay COD or send over a deposit for the work until we get our account settled which probably satisfy Mitch [a Shareholder of Vedder Price] and Howard [Vedder Price's CFO] as we don't want to incur more open account issues until we get on tract [sic]... but keep some work flowing with the [sic] end of Stanwich case.

34.     Although Sweeney and Towle continually promised Vedder Price that USCP would pay the entire balance, they and USCP clearly had no intention of paying Vedder Price for its legal services.

35.     Instead, Sweeney and Towle intended that Vedder Price rely on same so that Defendants could continue to get valuable legal advice from Vedder Price essentially for free.

36.     At no time, while benefitting from Vedder Price's legal services, regularly receiving its bills and promising to make payments, did Defendants complain about Vedder Price's work or billing; rather, Defendants frequently praised the quality of that work, including by reciting on its website and representing to the public through the date of this Complaint that Vedder Price was and is "one of US Capital Partners' most trusted legal advisors…"

37.     Despite receiving regular invoices and promising to make payments, neither Sweeney, Towle, nor USCP made the promised payments.

38.     Despite USCP's contractual obligations to pay Vedder Price's outstanding invoices, despite the promises of Sweeney and Towle that full payment would be made, and despite the absence of any criticism or complaints regarding the amounts invoiced or the quality of the legal services underlying the invoices, said invoices have not been paid and remain due and owing in the total amount of no less than $811,742.51, plus attorneys' fees, interest, and costs.

## FIRST CLAIM
(Breach of Contract)

39.     Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

40.     Vedder Price has performed all of its obligations pursuant to the USCP LLC Engagement Letter.

41.     Despite demands for payment, USCP LLC has failed and refused to satisfy its obligations to make payment to Vedder Price pursuant to the USCP LLC Engagement Letter.

42.     By reason of its failure to make payment to Vedder Price for the costs and legal fees incurred on its behalf, USCP LLC has breached the terms of the USCP LLC Engagement Letter.

43.     As a result of USCP LLC's breach of the USCP LLC Engagement Letter, Vedder Price has been damaged in an amount to be determined at trial, but not less than $795,774.56.

44.     As a result of USCP LLC's breach of contract, Vedder Price is entitled to recover a money judgment against USCP LLC in an amount to be determined at trial, but not less than $795,774.56, together with interest and costs.

## SECOND CLAIM
(Breach of Contract)

45.     Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

46.     Vedder Price has performed all of its obligations pursuant to the USCP Inc. Engagement Letter.

47.     Despite demands for payment, USCP Inc. has failed and refused to satisfy its obligations to make payment to Vedder Price pursuant to the USCP Inc. Engagement Letter.

48.     By reason of its failure to make payment to Vedder Price for the costs and legal fees incurred on its behalf, USCP Inc. has breached the terms of the USCP Inc. Engagement Letter.

49.     As a result of USCP Inc.'s breach of the USCP Inc. Engagement Letter, Vedder Price has been damaged in an amount to be determined at trial, but not less than $15,967.95.

50.     As a result of USCP Inc.'s breach of contract, Vedder Price is entitled to recover a money judgment against USCP Inc. in an amount to be determined at trial, but not less than $15,967.95, together with interest and costs.

## THIRD CLAIM
### (*Quantum Meruit*)

51.     Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

52.     Vedder Price provided legal services to Defendants, and incurred costs on behalf of Defendants, in good faith.

53.     Defendants accepted and received the benefit of the legal services performed by Vedder Price, as well as the costs incurred on their behalf.

54.     Vedder Price performed the legal services and incurred costs on behalf of Defendants with the expectation that it would be fairly compensated for its services and cost advances.

55.     The reasonable value of the unpaid legal services performed by, and the costs advanced by, Vedder Price on behalf of Defendants is at least $811,742.51.

56.     Vedder Price has been damaged in the amount of $811,742.51.

57.     Accordingly, Vedder Price is entitled to recover a money judgment against Defendants in the amount of $811,742.51, together with interest and costs.

## FOURTH CLAIM
### (Unjust Enrichment)

58.     Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

59.     In the alternative, and if the Court should find that the Engagement Letter is somehow unenforceable or that Vedder Price is not entitled to recover thereunder, it is entitled to recover the amounts due from Defendants on the basis of unjust enrichment.

60.     As set forth above, Vedder Price provided legal services to, and incurred costs on behalf of, Defendants.

61.     Defendants accepted and received the value and benefit of the legal services performed by Vedder Price, and the costs incurred on their behalf.

62.     It would be inequitable, unjust, and against good conscience to permit Defendants to maintain the benefit of the legal services provided to them without making payment to Vedder Price for the value thereof.

63.     Defendants have been unjustly enriched by reason of such actions and omissions in an amount to be determined at trial, but not less than $811,742.51.

64.     Vedder Price has been damaged in the amount of $811,742.51.

65.     Accordingly, Vedder Price is entitled to recover a money judgment against Defendants in the amount of $811,742.51, together with interest and costs.

## FIFTH CLAIM
(Account Stated)

66.     Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

67.     Between February 29, 2012 and July 31, 2016, Vedder Price sent to Defendants detailed invoices (collectively, the "Invoices") for the legal services and expenses it provided, in an amount totaling $1,822,617.16.

68.     Vedder Price sent to Defendants the Invoices in the ordinary course of business.

69.     Defendants received the Invoices from Vedder Price and made partial payment pursuant thereto in the amount of $1,010,874.65, leaving the sum of $811,742.51 outstanding.

11

70.     Defendants did not object to the Invoices at any time, in whole or in part, in any way, shape, or manner.

71.     Nevertheless, Defendants have failed and refused to pay the balance due pursuant to the Invoices.

72.     By reason of the foregoing, an account stated has been established for $811,742.51.

73.     Accordingly, Vedder Price is entitled to a money judgment for an account stated in the amount of $811,742.51, together with interest and costs.

<u>**SIXTH CLAIM**</u>
(Promissory Estoppel)

74.     Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

75.     Vedder Price contacted Defendants on numerous occasions, both verbally and in writing, demanding payment for the legal services and costs rendered to Defendants.

76.     In response, Defendants promised that the balance owed to Vedder Price would be paid in full.

77.     Defendants failed to make payment to Vedder Price as promised, however.

78.     Vedder Price relied upon Defendants' promises to make payment to its detriment when it agreed to continue providing legal services to Defendants.

79.     As a result, Vedder Price has been damaged in the amount of $811,742.51, and Defendants should be promissorily estopped from now disclaiming and/or challenging the amounts due to it.

80.     Accordingly, Vedder Price is entitled to a money judgment against Defendants in the amount of $811,742.51, together with interest and costs.

## SEVENTH CLAIM
(Fraud)

81.     Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

82.     As set forth above, Defendants engaged Vedder Price to represent them in numerous litigation, corporate and other matters.

83.     Throughout the representation, Sweeney and Towle were the main representatives of USCP who communicated with, and gave direction to, Vedder Price.  At all relevant times, Sweeney and Towle represented to Vedder Price that they controlled USCP and that they had full and sole authority to act on USCP's behalf.

84.     Despite Vedder Price providing legal services to them, Defendants stopped making payment of the amounts due to Vedder Price, leaving significant amounts due and outstanding.

85.     Vedder Price demanded payment for the amounts due and owing for legal services rendered on Defendants' behalf, in response to which Defendants repeatedly promised Vedder Price that the balance due and owing to it would be paid.

86.     Specifically, Sweeney and Towle represented to Mitchell D. Cohen, Esq., a shareholder at Vedder Price, and Howard Grossman, Vedder Price's CFO, both orally and in writing, and on behalf of USCP, that Vedder Price would be paid in full.

87.     At the time that Sweeney and Towle made such representations, neither Sweeney, Towle, nor USCP had any intention of paying Vedder Price for its legal services and knew that their promises to make payment in full to Vedder Price were false.

88.     Sweeney and Towle made such statements and representations for the purpose of inducing Vedder Price to rely thereupon and to continue to provide legal services on Defendants' behalf.

89.     Sweeney and Towle knew that, had they failed to make such representations to Vedder Price, or had they been truthful and advised Vedder Price that Defendants had no intention of making payment in full, Vedder Price would not have continued to perform legal services for Defendants.

90.     Vedder Price reasonably relied on Sweeney's and Towle's representations that Defendants would pay the balance in full, and continued to do legal work for Defendants, further increasing the legal fees and costs due and owing Vedder Price.

91.     As a result of Defendants' fraudulent misrepresentations, Vedder Price suffered damages in the amount of $811,742.51.

92.     Accordingly, Vedder Price is entitled to a money judgment against Defendants in the amount of $811,742.51, together with interest and costs.

## EIGHTH CLAIM
### (Declaratory Judgment-Successor Liability and Alter Ego)

93.     Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

94.     As set forth above, on or about September 30, 2014, Sweeney and Towle caused USCP LLC to cease operations, caused USCP LLC's business to operate under the name USCP Inc., and caused all of USCP LLC's assets, but none of its liabilities, to become part of USCP Inc.

95.     Through its actions, including directing Vedder Price to open new matters pursuant to the USCP LLC Engagement Letter, USCP Inc. expressly and/or impliedly acknowledged that it was the successor to USCP LLC and assumed USCP's liability to Vedder Price for the legal fees previously incurred by USCP LLC.

14

96.     As evidenced by, *inter alia*, USCP Inc. continuing to operate USCP LLC's business, doing so under the name "US Capital Partners" so as avoid making any explicit distinction between USCP LLC and USCP Inc., continuing to be owned by the same (or substantially the same) individuals, modifying its website to make it appear as if USCP Inc. had been the entity that had been operating since the organization of USCP LLC, and funding any of USCP LLC's settlement and other obligations, USCP Inc. was and is a mere continuation of USCP LLC.

97.     The transfer to USCP Inc. of USCP LLC's business operations and tangible and intangible property, leaving USCP LLC without assets, was made and entered into by Sweeney and Towle with the specific fraudulent intent to escape USCP LLC's obligations and liabilities to future creditors, including but not limited to Vedder Price.

98.     Vedder Price is without an adequate remedy at law.

99.     Accordingly, Vedder Price is entitled to a declaratory judgment that USCP Inc. is the successor entity to and/or the alter ego of USCP LLC, and is therefore liable to Vedder Price for the obligations of USCP LLC, such that Vedder Price can enforce any judgment that is entered herein against USCP LLC against the assets of USCP Inc.

### <u>NINTH CLAIM</u>
(Declaratory Judgment-Piercing the Corporate Veil)

100.     Plaintiff repeats, reiterates, and realleges each of the foregoing allegations of this Complaint as if more fully set forth herein.

101.     At all times relevant herein, Sweeney and Towle were the individuals who had (and represented to Vedder Price that they had) full and sole authority to act on behalf of USCP LLC, were the individuals who acted on behalf of USCP LLC, who directed and controlled USCP LLC's

business operations, including its substantive operations its cessation of business under its name, its transfer of its assets, and its commencement of business under USCP Inc.

102.    This complete domination and control by Sweeney and Towle over USCP LLC was used by them to engage in fraudulent and other wrongful conduct including, *inter alia*, transferring the assets of USCP LLC to USCP Inc. without consideration, ceasing USCP LLC's operations and commencing operation of that business under the name USCP Inc. in order to avoid future (and currently existing, but not yet asserted or payable) liabilities of USCP LLC, and leaving USCP LLC insolvent or with otherwise insufficient assets to satisfy its debts, including its obligations to Vedder Price.

103.    Sweeney and Towle so acted to benefit themselves and their equity in the business that was operated by USCP LLC at the expense of USCP LLC's creditors, including Vedder Price, causing substantial injury to Vedder Price.

104.    Vedder Price is without an adequate remedy at law.

105.    Accordingly, Vedder Price is entitled to a declaration that Sweeney and Towle are liable to it for the obligations of USCP LLC under a theory of piercing the corporate veil.

## ELEVENTH CLAIM
(Avoidance of Constructively Fraudulent Conveyance)

106.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if more fully set forth at length herein.

107.    Vedder Price is a creditor of USCP LLC with a mature claim against it in the amount of $811,742.51.

108.    At the time USCP LLC ceased operations, transferred such operational capacity to USCP Inc., and transferred all of its tangible and intangible property to USCP Inc. (collectively, the "Transfer"), USCP LLC had substantial assets and equity in its business.

109.    The Transfer was not made for fair consideration and rendered USCP LLC insolvent, *i.e.*, without sufficient assets to cover its debts as they came due.

110.    The Transfer was also made by USCP LLC at a time that it was aware of the extent of its obligations to Vedder Price and believed that, as a result of that obligation and others, it had or would incur debts beyond its then-current ability to pay.

111.    Accordingly, the Transfer was and is constructively fraudulent as to Vedder Price pursuant to Debtor & Creditor L. §§ 273 and 275.

112.    As a result of the constructively fraudulent nature of the Transfer, Vedder Price has been damaged.

113.    Vedder Price has no adequate remedy at law.

114.    Pursuant to N.Y. Debtor & Creditor L. § 278, and as a result of the constructively fraudulent nature of the Transfer, Vedder Price is entitled to a judgment setting aside the Transfer to the extent necessary to satisfy any judgment entered herein against USCP LLC or permitting Vedder Price to disregard the Transfer and attach or levy execution upon such assets and property.

## TWELFTH CLAIM
(Avoidance of Intentionally Fraudulent Conveyance)

115.    Vedder Price repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if more fully set forth at length herein.

116.    At the time of the Transfer, USCP LLC had substantial assets and equity in its business. .

117.    The Transfer was made by USCP LLC with the actual purpose and intent to hinder, delay, and/or defraud USCP LLC's present and future creditors, including but not limited to Vedder Price, by placing USCP LLC's assets and the equity in its business beyond the reach of USCP LLC's creditors.

118.    The intentionally fraudulent nature of the Transfer pursuant to Debtor & Creditor L. § 276 is evidenced by, *inter alia*, the close relationship between USCP LLC and USCP Inc. (the parties to the Transfer), the questionable nature of making the Transfer without consideration USCP LLC's inability to pay the obligations to Vedder Price after the Transfer, and the retention of control of the business operations by USCP LLC's principals and officers by doing so through USCP Inc.

119.    As a result of the Transfer, Vedder Price has been damaged.

120.    Vedder Price has no adequate remedy at law.

121.    Pursuant to N.Y. Debtor & Creditor L. §§ 276-a & 278, and as a result of the intentionally fraudulent nature of the Transfer, Vedder Price is entitled to a judgment setting aside the Transfer to the extent necessary to satisfy any judgment entered herein against USCP LLC or permitting Vedder Price to disregard the Transfer and attach or levy execution upon such assets and property, and is entitled to an award of statutory attorneys' fees incurred in connection herewith.

## THIRTEENTH CLAIM
(Conspiracy to Commit Intentional Fraudulent Conveyance)

122.    Vedder Price repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if more fully set forth at length herein.

123.    The Transfer was engineered by Sweeney and Towle, and was accepted by USCP Inc., with the express purpose and intent to assist USCP LLC in fraudulently concealing USCP LLC's assets and avoiding USCP LLC's payment of its debts.

124.    USCP Inc. had actual knowledge of the fraudulent intent at the time of the Transfer, and knew that the reason that Sweeney, Towle, and USCP LLC were seeking to undertake the Transfer was to protect its assets from its creditors, including Vedder Price.

125.    Sweeney, Towle, and USCP Inc. actively and intentionally participated in and substantially assisted USCP LLC in the Transfer pursuant to an understanding between them, committed overt acts in furtherance of that agreement, and did so for their own pecuniary benefit and with their own actual intent to hinder, delay, and defraud Vedder Price by purporting to place the equity in USCP LLC, its property and assets, and its business operations beyond the reach of USCP LLC's creditors.

126.    But for the actions of Sweeney, Towle, and USCP Inc. in engineering, participating in, and effectuating the fraudulent scheme, the Transfer could not have occurred and Vedder Price would be able to, *inter alia*, recover the amounts due to it from USCP LLC upon entry of a judgment herein.

127.    As a result of the intentionally fraudulent conduct of Sweeney, Towle, and USCP Inc., Vedder Price has been damaged in the amount of $811,742.51.

128.    The actions of Sweeney, Towle, and USCP Inc. were and are extreme and outrageous, and were undertaken maliciously, deliberately, and with willful intent to cause harm to USCP's creditors, entitling Vedder Price to punitive damages.

129.    As a result of the fraudulent actions of Sweeney, Towle, and USCP Inc., Vedder Price is entitled to a money judgment against them in the amount of $811,742.51, together with interest, costs, statutory attorneys' fees pursuant to Debtor & Creditor L. § 276-a, and punitive damages of not less than $5,000,000.00.

## FOURTEENTH CLAIM
### (Aiding and Abetting Intentional Fraudulent Conveyance)

130.    Vedder Price repeats, reiterates, and realleges each and every allegation contained in the foregoing paragraphs of this Complaint as if more fully set forth at length herein.

131.    Sweeney, Towle, and USCP Inc. knowingly, actively, and intentionally participated in, assisted, aided, and abetted USCP LLC in the commission of the Transfer.

132.    Sweeney, Towle, and USCP Inc. knew the purpose of the Transfer was to place the equity in USCP LLC, its property and assets, and its business operations beyond the reach of USCP LLC's creditors.

133.    It was foreseeable to Sweeney, Towle, and USCP Inc. at the time they actively assisted in the commission of the fraud that Vedder Price would be harmed as a result of their assistance.

134.    As a direct and natural result of the knowing, active, and intentional participation, assistance, aiding, and abetting by Sweeney, Towle, and USCP Inc in the fraud committed by the USCP LLC, Vedder Price has been damaged in the amount of $811,742.51.

135.    The actions of Sweeney, Towle, and USCP Inc. were and are extreme and outrageous, and were undertaken maliciously, deliberately, and with willful intent to cause harm to USCP's creditors, entitling Vedder Price to punitive damages.

136.    As a result of the actions of Sweeney, Towle, and USCP Inc., Vedder Price is entitled to a money judgment against them in the amount of $811,742.51, together with interest, costs, statutory attorneys' fees pursuant to Debtor & Creditor L. § 276-a, and punitive damages of not less than $5,000,000.00.

**WHEREFORE**, plaintiff Vedder Price P.C. respectfully demands judgment in its favor on the claims set forth in this Complaint, and for such other and further relief which as to this Court seems just, proper, and equitable.

Dated:  New York, New York
        August 29, 2016

BORG LAW LLP

By: _____
        Jonathan M. Borg (JB-9487)

370 Lexington Avenue, Suite 2103
New York, NY 10017
Telephone:      (917) 495-4790
Facsimile:      (207) 433-4790
Email:          jmb@borg.nyc

*Attorneys for Plaintiff, Vedder Price P.C.*