UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
             :
VEDDER PRICE P.C.,           :
             :
           Plaintiff,    :     16-CV-6787 (JPO)
             :
       -v-        :     OPINION AND ORDER
             :
US CAPITAL PARTNERS, LLC, US CAPITAL  :
PARTNERS, INC., JEFFREY SWEENEY and   :
CHARLES TOWLE,          :
             :
           Defendants.  :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

Plaintiff Vedder Price P.C. ("Vedder") brings this action against Defendants US Capital Partners, LLC ("USCP LLC"), US Capital Partners, Inc. ("USCP Inc."), Jeffrey Sweeney, and Charles Towle (collectively, "Defendants") to recover allegedly unpaid legal fees and expenses. Defendants defaulted by failing to answer the complaint in a timely manner. They now move to vacate the Clerk's Certificate of Default (Dkt. No. 17), and, if vacatur is granted, to dismiss or stay the action.

For the reasons that follow, Defendants' request for vacatur of the Certificate of Default is granted. Defendants' motion to dismiss is denied, without prejudice to any future motion to dismiss. Defendants' motion to stay further proceedings pending the outcome of arbitration is granted.

**I.    Background**

    **A.    Allegations in the Underlying Complaint**

USCP LLC is a private investment bank. (Dkt. No. 1 ("Compl.") ¶ 9.). Sweeney and Towle are the sole members of USCP LLC. (Compl. ¶¶ 5–6.) In 2011, USCP LLC engaged

1

Vedder as legal counsel and agreed to "compensate [it] for its legal services on an hourly basis, to reimburse [it] for out-of-pocket expenses incurred on its behalf, and to pay [its] monthly invoices within 30 days." (Compl. ¶ 11; *see also* Dkt. No. 23, Ex. 1.)  Pursuant to that agreement, Vedder provided legal services to USCP LLC in several affirmative and defensive actions, and provided representation to Sweeney and Towle in legal actions in which they were personally named as defendants.  (Compl. ¶ 12–13.)

In 2014, Sweeney and Towle began operating USCP LLC's business under the name USCP Inc., but the business of the corporation remained substantially the same as that of the LLC.  (Compl. ¶ 14–15.)  Vedder alleges that it continued to represent USCP LLC in ongoing matters and undertook to represent USCP Inc. pursuant to the terms of the LLC Engagement Letter.  (Compl. ¶ 14.)  In 2016, Sweeney executed an engagement letter with Vedder on behalf of USCP Inc., under which Vedder would provide legal services to USCP Inc. on substantially the same terms as those set out in the engagement agreement with USCP LLC.  (Compl. ¶ 18.)

During the course of Vedder's representation pursuant to these engagement letters, the parties communicated on a weekly basis about any matters that Vedder was handling for Defendants, and Vedder provided Defendants with status reports detailing the fees and costs incurred for each matter.  (Compl. ¶¶ 19–20.)  Defendants did not object to either the work performed or the amounts of the costs and fees.  (Compl. ¶ 22.)  Between February 2012 and July 2012, Vedder provided legal services and incurred costs on Defendants' behalf in the total amount of $1,822,617.16.  (Compl. ¶ 23.)  Defendants paid $1,010,874.65 of that amount, leaving a balance of $811,742.51 owed to Vedder.  (*Id.*)

Between December 2011 and July 2016, Sweeney and Towle made repeated oral and written promises to Vedder that Defendants would pay their full balance.  (Compl. ¶ 24.)  In

January 2016, for example, Towle promised that they would pay Vedder $10,000 per week. (Compl. ¶¶ 28–29.) On July 18, 2016, Sweeney proposed reducing the amount of these installments to $5,000 per week. (Compl. ¶ 30.) Despite their considerable arrearage, Defendants attempted to "persuade Vedder Price to continue providing legal services to them," including representation in a new matter. (Compl. ¶ 33), and although they received regular invoices and promised to make payments, Defendants failed to pay Vedder the amount owed.

### B. Procedural History

Vedder filed this action on August 29, 2016. (Dkt. No. 1.) The complaint alleges fourteen counts under various state law theories, including breach of contract, unjust enrichment, and fraud, seeking money damages and declaratory relief.[1] (Compl. ¶¶ 8–21.) Defendants were served on September 1, 2016, and their answer was due by September 22, 2016. (Dkt. Nos. 12–16.) Defendants failed to file a timely answer, and the Clerk of Court issued a Certificate of Default as to all Defendants on October 14, 2016. (Dkt. No. 17.)

Defendants maintain that they sought representation in this matter from Reid Collins & Tsai, and that prior to finalizing a retention agreement, a lawyer from that firm discussed with Vedder's counsel the possibility of a 45-day extension of the time in which Defendants were to respond to the complaint. (Dkt. No. 25 at 2.) Attorney Craig Boneau of Reid Collins & Tsai informed Defendants that Vedder's counsel agreed to a 45-day extension on the condition that Defendants "acknowledged service and waived any defense based on improper service." (*Id.* at 2; Dkt. No. 23 ¶ 7.) This agreement was never memorialized, however, because Defendants never finalized retention of Reid Collins & Tsai. (Dkt. No. 25 at 2.)

---

[1] Subject matter jurisdiction is based on the diversity statute, 28 U.S.C. § 1332. Vedder is a corporate citizen of Illinois, where it is incorporated and has its principal place of business. Defendants are all alleged to be citizens of California. The amount in controversy exceeds $75,000.

3

On October 28, 2016, two weeks after the Clerk issued the Certificate of Default, Defendants' current counsel contacted Plaintiff's counsel to request vacatur of the Certificate of Default. (Dkt. No. 25 at 3.) Plaintiff's counsel refused to agree to an extension of the time to respond or to a vacatur of the default. (*Id.*) On November 23, 2016, Defendants filed the present motion to vacate the Clerk's Certificate of Default. (Dkt. No. 21.)

## II. Motion to Vacate the Certificate of Default

Defendants seek to vacate the Certificate of Default pursuant to Federal Rule of Civil Procedure 55(c). Where, as here, "a final default judgment has not yet been entered, a Certificate of Default can be 'set aside' for 'good cause.'" *Ramsaran v. Abraham*, No. 15 Civ. 10182, 2017 WL 1194482, at *9 (S.D.N.Y. Mar. 30, 2017) (quoting Fed. R. Civ. P. 55(c)).[2]

A court may vacate a Certificate of Default where the default resulted from "mistake, inadvertence, surprise, or excusable neglect." *Id.* (quoting Fed. R. Civ. P. 60(b)(1) (internal quotation marks omitted)). In deciding whether vacatur is justified, "the court's determination must be guided by three principal factors: '(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice.'" *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005) (quoting *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 166–67 (2d Cir. 2004)). In light of the "[s]trong public policy" in favor of "resolving disputes on the merits," *American Alliance Insurance Co. v. Eagle Insurance Co.*,

---

[2] "The factors a court considers when deciding whether to set aside a Certificate of Default or a default judgment are the same, but 'courts apply the factors more rigorously in the case of a default judgment [under Rule 60(b)], because the concepts of finality and litigation repose are more deeply implicated.'" *Ramsaran*, 2017 WL 1194482, at *9 (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d. 90, 96 (2d. Cir. 1993)); *see also New York v. Green*, 420 F.3d 99, 109 (2d Cir. 2005) ("[G]ood cause" under Rule 55(c) is a "less rigorous standard than applies under Rule 60(b).").

4

92 F.3d 57, 61 (2d Cir. 1996), "all doubts must be resolved in favor of the party seeking relief from the [default]." *Green*, 420 F.3d at 104.

The Court concludes that all three factors support vacatur. First, Defendants' default was not willful. In the context of a default judgment, "'willfulness' . . . refer[s] to conduct that is more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). In contrast to situations in which "the conduct of counsel or the litigant was egregious and was not satisfactorily explained," a defendant's inadvertent mistake may be excusable. *Id.*

Here, Defendants have offered a satisfactory explanation for their failure to file an answer in a timely manner. Based on the information relayed by an attorney from Reid Collins & Tsai, they reasonably believed that Vedder's counsel had agreed in principle to a 45-day extension of their time to answer or otherwise respond to the complaint, as long as they retained counsel who would enter a formal appearance in the action. (Dkt. No. 25 at 8; Dkt. No. 23 ¶ 7; Dkt. No. 34 Ex. 1.) Upon receiving Vedder's Request for Entry of Default Judgment, Defendants took immediate action: they retained an attorney, who contacted Vedder's counsel and filed a notice of appearance just two weeks after the Clerk issued its Certificate of Default. (Dkt. No. 25 at 8; Dkt. No. 22 ¶ 2.) Notably, Defendants took action within the 45-day extension period to which they believed Vedder's counsel had provisionally agreed. (Dkt. No. 25 at 8.) The Court concludes that Defendants' failure to file a timely answer does not amount to a willful or "strategic decision to default." *Am. All. Ins. Co.*, 92 F.3d at 61.

Second, Defendants have adequately demonstrated that a meritorious defense is available if the default were to be vacated. "In order to make a sufficient showing of a meritorious defense in connection with a motion to vacate a [certificate of default], the defendant . . . must present evidence of facts that, 'if proven at trial, would constitute a complete defense.'" *McNulty*, 137

5

F.3d at 740 (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993)). This threshold is "very low." *Micolo v. Brennan*, No. 07 Civ. 4901, 2009 WL 742729, at *10 (E.D.N.Y. Mar. 18, 2009). "To satisfy the criterion of a 'meritorious defense,' the defense need not be ultimately persuasive at this stage," but rather it must be "good at law so as to give the factfinder some determination to make." *Am. All. Ins. Co.*, 92 F.3d at 61 (quoting *Anilina Fabrique de Colorants v. Aakash Chemicals and Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988).

Defendants have presented at least one meritorious complete defense. They contend that, because a material portion of the services in question were rendered in the State of California, and attorneys from Vedder's San Francisco office performed "19% of th[ose] services," (Dkt. No. 34 Ex. 2 at 7), California's Mandatory Fee Arbitration Act ("MFAA"), applies to this fee dispute. *See* Cal. Bus. & Prof. Code § 6200. "One of the distinct characteristics of arbitration under the MFAA is that it is voluntary for the client and mandatory for the attorney if commenced by the client." *Loeb v. Record*, 75 Cal. Rptr. 3d 551, 559 (Cal. Ct. App. 2008) (citing Cal. Bus. & Prof. Code § 6200(c)). "Thus, a client can force an unwilling attorney to arbitrate the fee dispute." *Id.* Moreover, the MFAA requires attorneys to "forward a written notice to the client prior to or at the time of service of summons or claim in an action against the client . . . for recovery of fees, costs, or both," which informs the client of her right to arbitration. Cal. Bus. & Prof. Code § 6201(a). Failure to do so is "a ground for the dismissal of the action or other proceeding." *Id.*; *see also Law Offices of Dixon R. Howell v. Valley*, 29 Cal. Rptr. 3d 499, 508 (Cal Ct. App. 2005) (holding that dismissal of an action for attorney fees for failure to give notice to of right to arbitrate under MFAA is discretionary).

6

Here, Defendants maintain (and Vedder does not dispute) that no such notice of their rights to arbitration was provided prior to service in this action. (Dkt. No. 25 at 10; Dkt. No. 35 at 8–9.) Consequently, Defendants have identified facts that, if proven, could potentially justify dismissal of this entire action. In other words, they have satisfied their low burden of establishing the existence of a meritorious defense. The Court need not draw any definitive conclusions about the persuasiveness of this putative defense—that Defendants have "present[ed] some evidence" supporting a meritorious defense is sufficient to justify vacatur. *Micolo*, 2009 WL 742729, at *10.

Third, and finally, Vedder will not be unduly prejudiced by vacatur of the default. In order for a party to demonstrate prejudice in the delay caused by lifting the default and permitting the litigation to continue, the party must show "the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion-circumstances that make it more difficult for plaintiff to prosecute its case." *Kuklachev v. Gelfman*, No. 08 Civ. 2214, 2009 WL 497576, at *3 (E.D.N.Y. Feb. 26, 2009) (quoting *Roberts v. Keith,* Copy. L. Rep. (CCH) P29,456, at *15 (S.D.N.Y.2007)). Here, Vedder does "not ma[k]e any allegations as to evidence, discovery, or fraud." *See id.* The lack of any adequate allegations of prejudice, *see* Dkt. No. 35 at 5–8, favors vacatur of the default.

Accordingly, Defendants' motion to vacate the Certificate of Default is granted.

### III. Motion to Dismiss or Stay

In addition to their motion to vacate the Certificate of Default, Defendants move to dismiss or stay the present action pending the outcome of MFAA arbitration. (Dkt. No. 25 at 8–11, 24–25.)

With respect to the motion to dismiss, the Court reiterates that any defense raised "need not be ultimately persuasive at this stage" in order to justify vacatur. *Am. All. Ins. Co.*, 92 F.3d at 61. Therefore, at this stage, it need not draw any decisive conclusions as to the merits of each of the numerous defenses raised. The motion to dismiss is therefore denied, without prejudice, and Defendants will be permitted to file a full-fledged motion to dismiss in due course.

The question whether to stay further proceedings pending MFAA arbitration, however, is properly before the Court at this stage. On November 23, 2016, Defendants filed a request for arbitration of this fee dispute under the MFAA. (Dkt. No. 34 Ex. 2 at 1.) Section 6201(c) of that Act provides that:

> Upon filing and service of the request for arbitration, the action or other proceeding shall be *automatically stayed* until the award of the arbitrators is issued or the arbitration is otherwise terminated. The stay may be vacated in whole or in part, after a hearing duly noticed by any party or the court, if and to the extent the court finds that the matter is not appropriate for arbitration under the provisions of this article.

Cal. Bus. & Prof. Code § 6201(c) (emphasis added). Indeed, this automatic stay is an important means of effectuating California's policy goal of "reduc[ing] the inherent advantage that attorneys would have if such disputes were resolved through lawsuits." *Loeb*, 75 Cal. Rptr. 3d at 559. As one federal court has noted, it "would completely defeat" the policies underlying the MFAA were "litigation to occur simultaneously with [MFAA] arbitration." *Naegele v. Albers*, 355 F. Supp. 2d 129, 141 (D.D.C. 2005) (citation omitted).

Accordingly, the Court grants Defendants' motion to stay proceedings pending the outcome of MFAA arbitration in California.

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion to vacate the Clerk's Certificate of Default is GRANTED.  Defendants' motion to dismiss is DENIED, without prejudice to any future motion under Rule 12(b).  Defendants' motion to stay the proceedings pending the outcome of the arbitration is GRANTED.  The parties are directed to submit a joint status report within two weeks of any determination as to liability by the arbitrator, and in any event on or before March 16, 2018.

SO ORDERED.

Dated: September 20, 2017
       New York, New York

_____
J. PAUL OETKEN
United States District Judge