UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VEDDER PRICE P.C.,
                          Plaintiff,

               -v-

US CAPITAL PARTNERS, LLC, and US
CAPITAL PARTNERS, INC.,
                         Defendants.

16-CV-6787 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

    In this state-law action, Plaintiff Vedder Price P.C. ("Vedder"), a law firm, seeks to recover unpaid fees and expenses from its former clients, Defendants US Capital Partners, LLC ("USCP LLC") and US Capital Partners, Inc. ("USCP Inc."). (Dkt. No. 1 ("Compl.") ¶ 1.) Defendants, in turn, have asserted counterclaims against Vedder (Dkt. No. 68), and discovery in the case is ongoing (*see* Dkt. No. 96). Now before the Court are Defendants' motion to unseal a document arising out of a prior arbitration between the parties (Dkt. No. 80) and Defendants' motion for leave to amend their counterclaims (Dkt. No. 81).[1] For the reasons that follow, the motion to unseal is denied and the motion to amend is granted in part and denied in part.

**I.    Background**

    Vedder initiated this lawsuit on August 29, 2016, by filing a fourteen-count civil complaint against Defendants.[2] According to the complaint, Vedder began providing USCP LLC legal services in a number of matters in late 2011 (Compl. ¶ 10), and also provided services

---

[1] Third-party plaintiffs Jeffrey Sweeney and Charles Towle, USCP LLC's two members (*see* Compl. ¶¶ 5–6), have also asserted a claim against Vedder as part of this action (*see* Dkt. No. 68 at 43–44), and they join Defendants' motions (*see* Dkt. Nos. 80–81).

[2] Vedder also initially named Sweeney and Towle as defendants (*see* Compl. ¶¶ 5–6), but it has since stipulated to the dismissal of all claims against Sweeney and Towle (Dkt. No. 49).

1

for USCP Inc. after "USCP LLC's business began being operated under the name USCP Inc." in September 2014 (Compl. ¶ 15; *see also* Compl. ¶ 14). Ultimately, the complaint goes on, Defendants racked up a bill in excess of $1.8 million between February 2012 and July 2016, and at least $811,742.51 of this total remained unpaid as of the date Vedder filed suit. (Compl. ¶ 23.)

Without yet having answered the complaint, Defendants, both of which are California entities (Compl. ¶¶ 3–4), notified the Court on November 23, 2016, that they had contacted the Bar Association of San Francisco ("BASF") to invoke their right to submit this dispute to arbitration pursuant to California's Mandatory Fee Arbitration Act ("MFAA"), Cal. Bus. & Prof. Code § 6200 *et seq.* (Dkt. No. 26). In light of this development, this Court stayed the present action pending the outcome of the MFAA arbitration in California. (Dkt. No. 41 at 7–8.)

Activity in this case resumed on July 1, 2018, when Vedder informed the Court that the arbitral proceedings had ended, that it rejected the outcome of those nonbinding proceedings, and that it wished to proceed with this litigation.[3] (Dkt. No. 50.) In addition, Vedder noted that the parties disagreed over whether the rejected arbitration award should be filed on the public docket in this case, and Vedder asked that the Court schedule a conference to address the matter. (Dkt. No. 51.) Before the Court could do so, however, Defendants took matters into their own hands by filing the award on the docket. (*See* Dkt. No. 52 at 2.) Defendants explained that, in their view, public filing was necessary "to avoid confusion or error concerning the scope and issues litigated in the Arbitration proceedings and the specific conclusions which Vedder rejects and seeks to re-litigate in this forum." (*Id.*) Upon Vedder's request (Dkt. No. 53), however, this Court ordered that the controverted filing be maintained under seal (Dkt. No. 57).

---

[3] Although activity in this case resumed after the conclusion of the MFAA arbitration, the Court never formally ordered that the case be unstayed. The Court now clarifies that the stay of this matter is lifted.

2

With that issue having momentarily been put to rest, Defendants answered Vedder's complaint on August 3, 2018. (Dkt. No. 68 ("CC").) Along with their answer, Defendants asserted six counterclaims against Vedder. (CC at 44–52.) According to Defendants, Vedder had managed a 2014 transaction that was designed to transfer certain of USCP LLC's assets to USCP Inc. without transferring any liabilities. (CC at 31.) But Defendants maintain that Vedder, despite its involvement in drawing a firm line between USCP LLC's liabilities and those of USCP Inc., filed this lawsuit in an attempt to coerce USCP LLC into paying off its debts by improperly threatening to hold USCP Inc. (as well as USCP LLC's individual members, who were originally named as defendants) liable for those debts. (CC at 37.) Based on these and other allegations, Defendants seek to recover against Vedder on claims of defamation, breach of fiduciary duty, breach of contract, professional negligence, and fraud.[4] (CC at 44–52.)

Vedder answered Defendants' counterclaims on September 10, 2018 (Dkt. No. 76), and the case proceeded to discovery (*see* Dkt. No. 78). Soon after, Defendants filed the two motions now at issue. First, Defendants moved to unseal the arbitration award they had previously filed on the docket. (Dkt. No. 80.) Second, Defendants moved to amend their counterclaims to add factual allegations regarding Vedder's alleged history of using aggressive litigation tactics as a means of debt collection and to add a new counterclaim alleging that Vedder's conduct in this litigation has violated New York's Judiciary Code, N.Y. Jud. Law § 487. (Dkt. No. 81.) Both motions have been fully briefed (Dkt. Nos. 80–81, 88, 91–92), and are fit for resolution.

---

[4] On top of Defendants' counterclaims, third-party plaintiffs Sweeney and Towle have asserted a single defamation claim against Vedder on their own behalves. (*See* CC at 43–44.)

## II. Motion to Unseal

### A. Legal Standard

The Second Circuit has recognized that a "common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). In addition to this common-law right of access, it is also "well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'" *Id.* at 120 (quoting *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004)).

Once a court has determined that a given document is subject to one or both of these access rights, a presumption of public access applies. In the context of the common-law access right, a court must first "determine the weight of that presumption" by considering "the role of the material at issue in the exercise of [federal] judicial power and the resultant value of such information to those monitoring the federal courts," *id.* at 119 (second quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995)), and the court must then determine whether to grant public access by balancing the presumption of access against "countervailing factors" such as "'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure,'" *id.* at 120 (quoting *Amodeo*, 71 F.3d at 1049). In the context of the First Amendment access right, a court must grant public access unless it makes "specific, on the record findings" demonstrating that access restrictions are "essential to preserve higher values and [are] narrowly tailored to serve th[ose] interest[s]." *Id.* (quoting *In re N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

### B. Discussion

The Court's analysis of Defendants' motion to unseal is informed in large part by the procedural vacuum in which that motion arises. As noted, Defendants filed the arbitration award

4

at issue as an attachment to a freestanding status update letter and not in connection with any motion or proceeding. Defendants did so, they claim, "to avoid confusion or error concerning the scope and issues litigated in the Arbitration proceedings and the specific conclusions which Vedder rejects and seeks to re-litigate in this forum." (Dkt. No. 52.) But it is not clear at present why "the scope and issues litigated in the Arbitration proceedings and the specific conclusions" announced in those proceedings are relevant to any issue before the Court. (*Id.*) For example, Defendants have not sought a ruling that the award precludes Vedder from advancing any particular claim in these proceedings. Nor have Defendants attempted to rely on the award in making any argument at the summary-judgment stage or at trial.[5] In short, no party has yet attempted to invoke the arbitration award as a basis for any action or forbearance on the part of the Court. It is therefore far from clear whether the arbitration award, at this stage, is the sort of "judicial document" to which a presumption of public access applies in the first place. *See Lugosch*, 435 F.3d at 119 ("In order to be designated a judicial document [subject to the common-law presumption], 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995))); *see also id.* at 120 (noting that the First Amendment presumption attaches to documents where, among other things "public access plays a significant positive role in the functioning of the particular process in question" (quoting *Hartford Courant*, 380 F.3d at 91)).

In any event, the Court need not decide whether a presumption of public access attaches to the arbitration award. Even if it does, the presumption has been overcome. Balanced against

---

[5] Of course, Defendants claim that the award *could* "be used and introduced" as evidence (Dkt. No. 80 at 13)—a claim that Vedder vigorously opposes (*see* Dkt. No. 88 at 4–5). But because no party has yet *actually* sought to introduce the arbitration award as evidence in this litigation for any specifically identified purpose, it would be premature for the Court to decide whether any hypothetical circumstances exist under which the award might be admissible.

5

the arbitration award's currently negligible role in this Court's adjudicative process is Vedder's expectation of confidentiality. California law provides that, with exceptions not at issue here, an MFAA arbitration award "shall not be admissible nor operate as collateral estoppel or res judicata in any action or proceeding," Cal. Bus. & Prof. Code § 6204(e), and the BASF, which conducted the parties' arbitration, has correspondingly provided that an MFAA award "shall remain confidential except as may be necessary in connection with a judicial challenge to, confirmation or enforcement of, the Award, or as otherwise required by law or judicial decision" (Dkt. No. 80-2 at 5). When Defendants chose to pursue MFAA arbitration, in other words, they invoked a procedure that offered the parties certain privacy guarantees. The Court will not lightly disregard those guarantees, particularly where they have their foundations in California's legislative policies. *See Fireman's Fund Ins. Co. v. Cunningham Lindsey Claims Mgmt., Inc.*, No. 03 Civ. 531, 2005 WL 1522783, at *3 (E.D.N.Y. June 28, 2005) (recognizing the "strong public interest in preserving the confidentiality of arbitration proceedings"); *cf. Guzik v. Albright*, No. 16 Civ. 2257, 2018 WL 6011612, at *3 (S.D.N.Y. Nov. 16, 2018) (recognizing that "an expectation of confidentiality" in a given document "can justify maintaining under seal the [document's] 'precise terms on matters that have no effect on the adjudication' in which it is introduced" (quoting *Louis Vuitton Malletier, S.A. v. Hyundai Motor Am.*, No. 10 Civ. 1611, 2012 WL 1022258, at *3 (S.D.N.Y. Mar. 22, 2012))).

Defendants offer two arguments as to why, in their view, Vedder's expectations of confidentiality are misplaced. Neither argument persuades.

First, Defendants contend that the BASF's rules require only the BASF *itself*—and not the parties to an arbitration—to maintain the confidentiality of an MFAA award. (Dkt. No. 80 at 11–12.) Defendants base this argument on a provision in the BASF's procedural rules that

forbids the BASF's arbitration program, absent a court order, from "disclos[ing] [an] Award to any individual or entity that was not a party to the Arbitration proceeding." (Dkt. No. 80-2 at 5.) But those same rules *also* provide, without qualification, that "[t]he Arbitration case file, including . . . the Award[] itself[,] [is] to remain confidential." (*Id.*) Nothing in the text of this blanket directive indicates that it is limited to the BASF itself, and indeed, it is clear from context that the confidentiality rule is *not* so limited. For example, the rule contains an exception that authorizes the introduction "[i]n any subsequent proceeding" of "any transcript or tape recording" of the arbitral proceedings under certain circumstances. (Dkt. No. 80-2 at 5.) But such an exception would be unnecessary if the confidentiality rule bound only the BASF because, as Defendants themselves recognize, "the [BASF Arbitration] Program is not expected to be a party seeking to admit the transcript in a subsequent proceeding." (Dkt. No. 80 at 11.)

Second, Defendants point out that, with some exceptions, California law provides that the MFAA "shall not apply" to "[c]laims for affirmative relief against [an] attorney . . . based upon alleged malpractice or professional misconduct." Cal. Bus. & Prof. Code § 6200(b)(2). And because Defendants have raised a malpractice counterclaim against Vedder, they reason, the MFAA's confidentiality protections are inapplicable here. (Dkt. No. 80 at 13–14.) But the fact that malpractice claims are not subject to the MFAA's "system and procedure for mediation" of disputes over attorney's fees, Cal. Bus. & Prof. Code § 6200(a), hardly suggests that an award that *does* arise out of the MFAA framework—such as the award at issue here—is exempt from the limitations of that framework whenever one party seeks to introduce it in a subsequent malpractice litigation. Such a rule would contravene the restrictions California law places on the use of an MFAA award "in *any* action or proceeding." *Id.* § 6204(e) (emphasis added).

7

The Court therefore concludes that Vedder is entitled to expect that the result of the MFAA arbitration will remain confidential. And although this expectation might not justify maintaining the MFAA award under seal should the contents of the award become relevant to some particular issue before the Court, it is sufficiently weighty to require continued sealing at present, where disclosure of the award would offer the public no insight into the adjudicatory process. Defendants' motion to unseal the arbitration award is therefore denied without prejudice to renewal in the event of a material change in the circumstances of this case.

## III. Motion to Amend

### A. Legal Standard

Federal Rule of Civil Procedure 15 directs courts to "freely give leave" for a party to file an amended pleading "when justice so requires." Fed. R. Civ. P. 15(a)(2). In ruling on a motion to amend, "the Court should consider whether the motion is being made after an inordinate delay without adequate explanation, whether prejudice to the [opposing party] would result, whether granting the motion would cause further delay, and whether the amendment would be futile." *Vt. Country Foods, Inc. v. So-Pak-Co., Inc.*, 170 F. App'x 756, 759 (2d Cir. 2006) (summary order) (quoting *Mountain Cable Co. v. Pub. Serv. Bd.*, 242 F. Supp. 2d 400, 403 (D. Vt. 2003)).

Relevant here, "[a]n amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to [Federal Rule of Civil Procedure] 12(b)(6)." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002). To survive such a motion, a claim must be based on factual allegations that, if assumed to be true, are sufficient "to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), by "allow[ing] the court to draw the reasonable inference that the [accused party] is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

8

B.   **Discussion**

Defendants seek to amend their counterclaims in two ways.

First, Defendants seek to introduce new factual allegations that, they argue, illustrate Vedder's history of abusing the judicial process as a part of its debt collection efforts. (Dkt. No. 81 at 2–3.) Vedder makes no argument as to why these proposed amendments should be disallowed, and the Court therefore grants Defendants' motion to amend to the extent that Defendants seek to introduce these new factual allegations into their counterclaims.

Second, Defendants seek to add a new counterclaim alleging that Vedder has violated Section 487 of New York's Judiciary Code, N.Y. Jud. Law § 487, through its conduct in this lawsuit. (Dkt. No. 81 at 2–3; Dkt. No. 92 at 3.) Section 487 authorizes an injured party to bring a private civil suit against an attorney who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party." N.Y. Jud. Law § 487(1). Defendants' proposed amended pleading alleges that Vedder has violated this statute by publishing "intentionally false allegations, conclusions, and claims for relief" in its complaint and pursuing a "collection strategy" of filing such claims against entities that are not liable for USCP LLC's debts in an effort to induce payment.[6] (Dkt. No. 81-2 at 57–58.)

Vedder, however, maintains that Defendants' proposed amended pleading fails to state a viable Section 487 claim for multiple reasons. (Dkt. No. 88 at 7–8.) First, Vedder argues that Section 487 does not apply to attorney conduct in suits, such as this one, that are heard in federal

---

[6] Defendants' proposed amended counterclaims also make reference to a lawsuit that Vedder has filed against another of its former clients in New Jersey Superior Court (Dkt. No. 81-2 at 42–44), but Defendants have disclaimed any attempt to hinge Section 487 liability on Vedder's conduct in the New Jersey lawsuit (*see* Dkt. No. 92 at 3). The Court therefore need not address Vedder's argument that Defendants cannot press a Section 487 claim on the basis of the New Jersey suit. (*See* Dkt. No. 88 at 10–11.)

9

court. (Dkt. No. 88 at 9–11.) Second, Vedder argues that Section 487 applies only to actions that an attorney has taken in the role of an attorney and not to actions that an attorney (or a law firm) has taken in the role of a private litigant who has retained outside counsel. (Dkt. No. 88 at 11–12.) Third, Vedder argues that Defendants' proposed Section 487 claim is duplicative of their other claims. (Dkt. No. 88 at 12–13.) Finally, Vedder argues that Defendants' proposed amended pleading fails to plausibly allege any deceitful conduct. (Dkt. No. 88 at 13–14.)

The Court agrees with Vedder on the second point and so need not address the remainder of Vedder's arguments. New York courts have recognized that Section 487 "applies to an attorney acting in his or her capacity as an attorney, not to a party who is represented by counsel and who, incidentally, is an attorney." *Oakes v. Muka*, 868 N.Y.S.2d 796, 798 (App. Div. 3d Dep't 2008); *see also People v. Canale*, 658 N.Y.S.2d 715, 717 (App. Div. 3d Dep't 1997) ("[C]ourts have generally held that [Section 487] is limited to actions by an attorney acting in his or her capacity as an attorney and that the mere fact that a wrongdoer is an attorney is insufficient to impose liability."). In this case, Defendants' proposed Section 487 claim seeks to hold Vedder liable for actions it has taken (through independent counsel) as a private litigant in a civil suit and not as the legal representative of a client in such a suit. Courts have rejected efforts to use Section 487 in this manner. *See, e.g.*, *Tacopina v. Kerik*, No. 14 Civ. 749, 2016 WL 1268268, at *5 (S.D.N.Y. Mar. 31, 2016) (dismissing a Section 487 claim asserted against an attorney acting as a private plaintiff in a defamation suit against a former client).

Defendants, for their part, have cited no cases in which a Section 487 claim has been allowed to proceed against an attorney on the basis of alleged misconduct in a civil suit in which the attorney was acting as a counseled private litigant. Instead, they cite *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229 (S.D.N.Y. 2012), which held that a Section 487 claim could

10

proceed against an attorney even though the party asserting the claim had not alleged "in so many words" that the attorney had been acting in his capacity as an attorney when he had engaged in the allegedly deceitful conduct that formed the basis for the claim, *id.* at 261. (Dkt. No. 92 at 3–4.) But in *Donziger*, unlike here, the attorney was alleged to have been representing clients in the proceedings in which the alleged misconduct occurred. *See Donziger*, 871 F. Supp. 2d at 235. The *Donziger* court therefore found it plausible to infer that the alleged misconduct had occurred as part of that representation. *See id.* at 261. Here, in contrast, Vedder is not acting as the attorney of any party to the litigation in which it has allegedly committed misconduct.

Because Defendants have failed to allege that Vedder has engaged in any deceitful conduct *in its capacity as an attorney*, the Court concludes that Defendants' proposed amended pleading fails to state an actionable Section 487 claim. Accordingly, the Court denies Defendants' motion to amend to the extent that Defendants seek to introduce such a claim.

**IV.     Conclusion**

For the foregoing reasons, Defendants' motion to unseal is DENIED and Defendants' motion to file amended counterclaims is GRANTED in part and DENIED in part. The stay in this case is lifted.

The Clerk of Court is directed to close the motions at Docket Numbers 80 and 81 and to designate this case as no longer stayed.

SO ORDERED.

Dated: May 6, 2019
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

11